**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| EDGAR VELOZ ALVARADO, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | |
| SCOTT LADWIG, Acting Director of the New Orleans Field Office of ICE, in his official capacity, | ) ) ) ) | No. 2:26-cv-02124-SHL-atc |
| Respondent. | ) ) | |

**ORDER GRANTING PETITION**

On February 7, 2026, Petitioner Edgar Veloz Alvarado filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 because he is being held in immigration detention without a bond hearing.  (ECF No. 1.)  He seeks not a bond hearing, but his "immediate, unconditional release," arguing that his detention is "void ab initio" and that "a bond hearing is an inadequate remedy in the face of the government's 'automatic stay' power and explicit defiance of judicial orders."[1] (ECF No. 1 at PageID 1–2.)  On February 23, the Court issued an order setting a schedule and staying the transfer of Veloz Alvarado from the West Tennessee Detention Facility.  (ECF No. 16.)  Respondent Scott Ladwig's response, (ECF No. 15), filed previously, was deemed

---

[1] Veloz Alvarado's Petition also requests attorney's fees and costs under the Equal Access to Justice Act ("EAJA").  (ECF No. 1 at PageID 9.)  However, a motion for attorney's fees is due "within 30 days of final judgment."  28 U.S.C. § 2412(d)(1)(B).  Under the EAJA, a "final judgment" is a judgment that is final and not appealable; here, that time occurs sixty days after the judgment, as that is the deadline for appeal.  Melkonyan v. Sullivan, 501 U.S. 89, 96 (1991).  Therefore, a motion for costs and attorney's fees ripens ninety days after judgment here, and should not be considered earlier.  See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 15 (W.D. Tenn. filed Jan. 5, 2026).  The Court therefore defers on the issue of fees and costs until the motion, if filed, ripens.

operative.  (ECF No. 16 at PageID 89.)  For the reasons explained below, Veloz Alvarado is entitled to immediate release, and the Petition is **GRANTED**.

### BACKGROUND

Veloz Alvarado is a Venezuelan citizen who unlawfully entered the United States on September 28, 2023.  (ECF Nos. 1 at PageID 3; 14 at PageID 60.)  "Upon arrival, [the Department of Homeland Security ("DHS")] released him under the discretionary authority of 8 U.S.C. § 1226(a)."  (ECF No. 1 at PageID 3.)  He lived in the United States for the next two years without a criminal record.  (Id.)

On September 28, 2025, Veloz Alvarado "was served with a Notice to Appear," which charged him with "being 'an alien present in the United States who has not been admitted or paroled'" under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i).  (ECF No. 14 at PageID 60, 69.)  ICE detained Veloz Alvarado on November 2, 2025, while he worked "on a car outside his friends' apartment in Winchester, Tennessee."  (ECF No. 1 at PageID 3.)  On January 13, 2026, an Immigration Judge ("IJ") ordered him to be deported to Ecuador.[2]  (ECF No. 14-2 at PageID 74.)  The record does not indicate that Veloz Alvarado has any ties to Ecuador.

Veloz Alvarado appealed his removal decision to the Board of Immigration Appeals ("BIA") on February 3, 2026.  (ECF No. 14-3 at PageID 76.)  He remains in Respondent's custody at the West Tennessee Detention Facility in Mason, Tennessee.  (ECF No. 1 at PageID

---

[2] Ladwig does not argue that the January removal order changes the statutory analysis here, although he implies that the Court should defer to Congress' decision to "include evidentiary hearings, motion practice, and appeals" in the removal process.  (ECF No. 14 at PageID 62.)  Despite the pending removal order, this Court has jurisdiction to review the "lawfulness of [petitioner's] detention itself."  Herrera v. Sec'y of the U.S. Dep't of Homeland Sec., NO. 26-cv-00125, 2026 WL 554707, at *7 (N.D. Ohio, Feb. 27, 2026) (citing Enriquez-Perdomo v. Newman, 54 F.4th 855, 863 (6th Cir. 2022)).

3.)  He filed the present Petition on February 7, 2026, the core issue of which is whether his detention under 8 U.S.C. § 1225 violated his due process rights.

Indeed, under recently adopted guidance from DHS and ICE, Veloz Alvarado is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and was allegedly declared ineligible to be released on bond.  Until recently, however, most noncitizens in this situation were given bond hearings.  See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025).  Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons.  For example, noncitizens with certain criminal records may not be released on bond under § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission."  "Applicants for admission" has, for decades, been interpreted to mean recent arrivals, specifically those who have not been "physically present in the United States continuously" for the previous two years.  See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

However, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy reinterpreting §§ 1225(b)(2)(A) and 1226(a).  Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").  The policy reclassified all undocumented

3

immigrants, even those who have lived in the United States for years, as "applicants for admission." (Id.)  And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A). (Id.)

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status. As a result, all undocumented immigrants awaiting removal are detained without a bond hearing. This new interpretation was later adopted by the BIA in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025). (ECF No. 1 at PageID 4.)

Veloz Alvarado, who has lived continuously in the United States for two years, faces the risk of continued detention without a bond hearing. His Petition alleges Due Process violations under the Fifth Amendment and a violation of his status as a member of the "Bond Eligible Class" under Maldonado Bautista v. Santacruz, No. 25-cv-01873, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), which vacated ICE's July 2025 policy nationwide. (ECF No. 1 at PageID 6.)  He argues that it would be futile to require him first to exhaust his administrative remedies because "the Board of Immigration Appeals (BIA) has established binding precedent in Yajure Hurtado holding that IJs lack jurisdiction to grant bond." (Id. at PageID 4.)  He seeks a writ of habeas corpus ordering his "immediate, unconditional release." (Id. at PageID 8.)  He argues that no lesser remedy is adequate in view of the Government's "automatic stay" power under 8 C.F.R. § 1003.19(i)(2).[3]  (ECF No. 1 at PageID 6.)

---

[3] See 8 C.F.R. § 1003.19(i)(2) ("In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR–43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board.  The decision whether or not to file Form EOIR–43 is subject to the discretion of the Secretary.").

In response, Respondent contends that Veloz Alvarado failed to exhaust his administrative remedies, § 1225 applies here, no due process violation occurred, the Maldonado declaratory judgment "does not apply to Petitioner or bind this Court," and that, even if the Court grants Veloz Alvarado relief, it should merely grant a bond hearing, not immediate release. (ECF No. 14 at PageID 60–61.)

## **ANALYSIS**

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Veloz Alvarado challenges his detention without bond as violative of his constitutional rights.  (ECF No. 1 at PageID 8.)  The Court first considers the threshold question of whether Veloz Alvarado should be required to exhaust his administrative remedies.  Then, the statutes are construed to determine whether §1225 or § 1226 is applicable.  A due process analysis follows.  Finally, the appropriate manner of release is analyzed.

## I.     Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief. McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  When Congress is silent on administrative exhaustion, "sound judicial discretion governs."  Id.  Thus, the doctrine of prudential exhaustion holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse to hear habeas petitions that challenge bond determinations until a petitioner exhausts available administrative remedies.  McCarthy, 503 U.S. at 144.  The Sixth Circuit has previously applied this doctrine to dismiss petitions for lack of jurisdiction.  See Rabi v. Sessions, No. 18-3249,

5

2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018).  In the context of immigrant detention, some district courts require detained immigrants to exhaust their administrative remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the courts will review their habeas petitions.  E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S. Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner claims.  Courts have reached these conclusions when (1) "the legal question is fit for resolution and delay means hardship, or (2) exhaustion would prove futile."  Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question.  Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21, 2025) (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385 (2024)).  Further, when administrative procedures involve "an indefinite or unreasonable timeline," such delays result in hardship.  Id.  If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused.  Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought."  Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Veloz Alvarado argues that exhaustion should not be required here because 28 U.S.C. § 2241 does not require exhaustion and exhaustion would be futile.  (ECF No. 1 at PageID 3–4.) He contends that the Sixth Circuit only treats exhaustion in cases like this as prudential, so this Court should use its discretion to waive exhaustion.  (Id.)  He also argues that exhaustion would

6

be futile given the 2025 decision in Yajure Hurtado that IJs lack jurisdiction to preside over bond

hearings.  (Id. at PageID 4.)  Further, he asserts that the BIA cannot adjudicate constitutional

claims.  (Id.)

Ladwig argues that the Court should dismiss the Petition based on prudential exhaustion,

as Veloz Alvarado has not appealed received an adverse decision from the BIA.  (ECF No. 14 at

PageID 62.)  He recognizes that Congress has not imposed an administrative exhaustion

requirement, and that "sound judicial discretion governs" the Court's decision.  (Id. at PageID 61

(citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)).  But he points to the Sixth Circuit's

opinion in Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July

16, 2018), and certain decisions in the Northern District of Ohio, e.g. Villalta, 2025 U.S. Dist.

LEXIS 169688, which required petitioners to appeal to the BIA before seeking habeas relief

under "prudential principles of exhaustion."  (Id.)

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for

immigrants in ICE custody.  Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement.  And

the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases.

See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn.

Dec. 30, 2025).  Therefore, exhaustion may only be required here based on "sound judicial

discretion."  McCarthy, 503 U.S. at 144.  But exhaustion may be excused if "the legal question is

fit for resolution and delay means hardship, or exhaustion would prove futile."  Shalala, 529 U.S.

at 13.

Veloz Alvarado's failure to exhaust is excused.  First, the question he poses in the

Petition is fit for resolution and undue delay would impose hardship on him.  The Parties do not

dispute any material facts.  (See ECF Nos. 1 at PageID 3; 14 at PageID 60.)  Thus, deciding

which statute applies to Veloz Alvarado's detention is a purely legal question, "which is right in a federal court's wheelhouse." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8. Further, if Veloz Alvarado is required to pursue an appeal with the BIA, his appeal process would likely take six months or more. See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)). Bond hearings were designed to prevent prolonged detention during removal proceedings, which are often lengthy. Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted). Therefore, denying Veloz Alvarado the chance to have a bond hearing merely because he did not wait for the BIA's decision may force him "to endure six months or more of potentially unlawful detention and thus would cause him great hardship." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion here. The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal immigrants who "have been residing in the United States for years." 29 I. & N. Dec. at 220–21. Thus, any appeal is likely futile, and exhaustion is excused.[4]

## II.    Statutory Interpretation

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)). Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" Kentucky v. Biden, 23 F.4th 585, 603 (6th

---

[4] Given that exhaustion is waived, Veloz Alvarado's additional arguments about exhaustion need not be considered. See Sharpe v. Comm'r of Soc. Sec., No. 20-CV-02732, 2022 U.S. Dist. LEXIS 106311, at *30 n.5 (N.D. Ohio Apr. 1, 2022) (collecting cases where courts in the Sixth Circuit declined to address alternative arguments in the interest of judicial economy).

Cir. 2022) (citation modified) (citing <u>Walters v. Metro. Edu. Enters., Inc.</u>, 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens"). Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>        . . .
>        (2)    Inspection of other aliens
>               (A)    In general
>                      Subject to subparagraphs (B) and (C), in the case of an alien who is an <u>applicant</u> <u>for</u> <u>admission</u>, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien <u>shall</u> <u>be</u> <u>detained</u> for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Under this section, all applicants for admission "shall be detained." <u>Id.</u> § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

> (a)    Arrest, detention, and release
>        On a warrant issued by the Attorney General, an alien <u>may</u> <u>be</u> <u>arrested</u> <u>and</u> <u>detained</u> pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>        (1)    <u>may</u> <u>continue</u> <u>to</u> <u>detain</u> the arrested alien; and
>        (2)    <u>may</u> <u>release</u> the alien on—
>               (A)    bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
>                      . . .

9

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a

noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

<u>Id.</u> § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a

custody redetermination (i.e., a bond hearing) before an IJ."  <u>Lopez-Campos</u>, 2025 WL 2496379,

at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there

is a risk of nonappearance or danger to the community."  <u>Id.</u> (citing <u>Guerra</u>, 24 I. & N. Dec. 37,

40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses,

§ 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a

hearing before an IJ on the issue.[5]

Veloz Alvarado argues that his detention under ICE's new interpretation of §

1225(b)(2)(A) violates his Fifth Amendment due process right.  (ECF No. 1 at PageID 8.)  He

argues that 8 U.S.C. § 1226(a) applies to his detention because he is an "interior resident," and

was not detained at the border as one "seeking admission" into the United States.  (<u>Id.</u> at PageID

4–5, 8.)  He further argues that the new interpretation of § 1225(b)(2)(A) renders portions of the

2025 Laken Riley Act superfluous, and that it runs against the "major questions" doctrine, which

teaches that Congress "does not 'hide elephants in mouseholes.'"  (<u>Id.</u> at PageID 5 (citing <u>West

Virginia v. EPA</u>, 597 U.S. 697, 722 (2022); and then quoting <u>Whitman v. Am. Trucking Assocs.</u>,

---

[5] <u>See</u> 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

531 U.S. 457, 468 (2001)).)  For these reasons, he seeks "immediate, unconditional release,"

arguing that a bond hearing alone "cannot cure the 'hourly loss of constitutional liberty' resulting

from an illegal detention that was void ab initio."  (Id. at PageID 6 (citing Cardona v. Ladwig,

No. 25-CV-01451, 2025 WL 3722009, at *7 (M.D. Tenn. Dec. 3, 2025)).)

Ladwig argues that § 1225(b)(2)(A), not § 1226(a), applies to Veloz Alvarado because he

"entered the United States without inspection or parole" and thus "remains an 'applicant for

admission' who is treated, for constitutional purposes, as if stopped at the border."[6]  (ECF No. 14

at PageID 62.)  As a result, he asserts, Veloz Alvarado "is subject to mandatory detention and not

entitled to a bond hearing."  (Id.)  Ladwig incorporates by reference similar statutory arguments

made by ICE respondents in prior cases such as Monge-Nunez v. Ladwig, No. 25-cv-03043,

2025 WL 3565348 (W.D. Tenn. Dec. 12, 2025).  (Id. at PageID 63.)  He emphasizes recent

cases—in this District and from the Fifth Circuit Court of Appeals—as persuasive authority for

the proposition that continued detention under § 1225 without bond here "does not violate due

process."  (ECF No. 14 at PageID 63–64 (discussing Gonzalez v. Ladwig, No. 2:26-cv-02017,

2026 WL 413602 (W.D. Tenn. Feb. 13, 2026) and Buenrostro-Mendez v. Bondi, 166 F.4th 494

(5th Cir. 2026)).)  Further, Ladwig asserts that under the "entry fiction," even if "[Veloz

Alvarado] is detained under the wrong statute," that mistake does not make his detention

"unconstitutional," as he is considered, for legal purposes, as stopped at the border.  (ECF No. 14

at PageID 64–65.)  Finally, Ladwig argues that, if the Court decides that § 1226 applies here, a

---

[6] The doctrine that an undocumented immigrant who is briefly stopped near the border at or soon after entry, remains considered "stopped at the border" even after being paroled into the United States, is referred to as "entry fiction."  Bahena v. Trump, NO. 25-223-DLB, 2026 U.S. Dist. LEXIS 23861, at *21–23 (E.D. Ky. Feb. 5, 2026); Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020).  The entry fiction doctrine does not apply here, despite Veloz Alvarado's stop at arrival and release by DHS, because Ladwig has not shown that he belongs to one of the three categories triggering application of that doctrine.

11

bond hearing should be ordered instead of immediate release, so that an IJ can determine whether to grant Veloz Alvarado a bond.  (Id. at PageID 67.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Ladwig's contention that Veloz Alvarado is an "applicant for admission" who is "seeking admission."  Beginning with the titles, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The title of § 1226(a) is "Apprehension and detention of aliens."  Although titles of statutes are not controlling, they are "tools available for the resolution of a doubt about the meaning of a statute."  Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified).  Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal" proceedings.  But Veloz Alvarado was not "arriving" when he was detained far away from the United States border, after having been in this country for more than two years.  (ECF No. 1 at PageID 3.)  Also, the record does not show that he was eligible for expedited removal proceedings.  Thus, the mandatory detention provision of § 1225 does not apply to him.

Relatedly, the subject matter of § 1225 undercuts Ladwig's reading of the statute. Section 1225 describes the process of inspecting and removing immigrants actively crossing the border.  See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.").  Section 1225 explicitly applies to "an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ."  8 U.S.C. § 1225(b)(1)(A)(iii)(II).  It does violence to the statute to argue that § 1225 applies to Veloz

12

Alvarado, who has been physically present in the United States continuously for two years, and who is not actively crossing the border.

Further, Ladwig's reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself.  "If possible, every word and every provision is to be given effect."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012).  But to apply § 1225(b)(2)(A) to Veloz Alvarado would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The record does not show that Veloz Alvarado was seeking admission at the time of his detention.  The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for over two years.  To interpret "alien seeking admission" using its ordinary meaning but outside the context of the provision, as argued by Ladwig, is untenable.  See Rios Pena v. Ladwig, No. 2:25-cv-03082, 2025 WL 3679766, at *7 (W.D. Tenn. Dec. 18, 2025) ("[Section] 1226 authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings.  Respondent has articulated no compelling reason to stray from this commonsense understanding.")  (internal quotations and citation omitted).

Also, Ladwig's interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous.  That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond.  Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained.  8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having

13

committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .").  But, under Ladwig's reading of § 1225, all arrested noncitizens must be detained without bond.  Thus, § 1226(c) would have no purpose.  Yet, courts must "give effect, if possible, to every clause and word of a statute." Duncan v. Walker, 533 U.S. 167, 174 (2001).  Veloz Alvarado's reading of the statute is the only one compatible with the presence of § 1226(c).  Moreover, he has no criminal record in the United States, so this mandatory detention provision cannot conceivably be applied to him.  See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Veloz Alvarado's situation.  That section applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Veloz Alvarado was charged with being removable and detained by ICE in Tennessee.  Thus, the Attorney General has discretion under this section.  She "may continue to detain [him]" or she "may release [him] on bond."  (Id.)  But the Attorney General may not deny him the bond hearing to which he is entitled.  See 8 C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support granting the Petition, but the Congressional intent behind § 1226(a) is also supportive.  In 2025, Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude noncitizens with specific criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would not have added exceptions to the broad rule of § 1226(a) if, as Ladwig asserts, it intended § 1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove Orthopedic Assocs.,

14

P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the [rule] does not apply generally. In fact, it proves the opposite."). On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025. After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025)).

For the reasons stated above, the Court is unpersuaded by the recent cases cited by Ladwig, and disagrees with the statutory interpretation in Gonzalez, 2026 WL 413602, which is nonbinding here. See Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC, 2020 WL 6694299, at *3, *3 n.1 (W.D. Tenn. Nov. 13, 2020) ("Decisions made by district courts within the same district are not binding on one another.") (citing Chinn v. Jenkins, No. 3:02-cv-512, 2018 WL 488159, at *2 (S.D. Ohio Jan. 19, 2018)). In addition, Ladwig's reliance on Yajure Hurtado in support of his statutory argument fails because the BIA lacks authority to opine on constitutional challenges to agency action. Sterkaj v. Gonzales, 439 F.3d 273, 279 (6th Cir, 2006); see also Loper Bright Enters. v. Raimondo, 603 U.S. 369, 398–402 (2024) ("The very point of the traditional tools of statutory construction—the tools courts use every day—is to resolve statutory ambiguities.") (explaining that reviewing courts "decide all relevant questions of law and interpret statutory provisions" (citation modified)).

Given the plain language of §§ 1225 and 1226, the arrest and detention of Veloz Alvarado, who has been continuously present in the United States for over two years, is governed by § 1226(a), and is subject to that section's discretionary bond process.

15

### III.    Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)."  Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)).  In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen.  See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020).  Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

Veloz Alvarado argues that Ladwig violates the Due Process Clause of the Fifth Amendment by "detaining [him] under a mandatory scheme that bypasses any individualized assessment of flight risk or danger."  (ECF No. 1 at PageID 8.)  He also argues that a bond hearing is an inadequate remedy, as Ladwig and DHS have the power to automatically stay proceedings and keep him detained through a Form EOIR–43.  (Id.)  But Ladwig contends that Veloz Alvarado's due process rights were not violated because, under the entry fiction doctrine, he should be "'treated' for due process purposes 'as if stopped at the border.'"  (ECF No. 14 at PageID 65–66 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)  In turn, Veloz Alvarado replies that the entry fiction doctrine is inapplicable here, relying on a District of Massachusetts ruling that the Fifth Amendment's due process protections extend to

16

undocumented immigrants who are interior residents. (ECF No. 18 at PageID 92–93 (citing

D.V.D. v. U.S. Dep't of Homeland Sec., No. 1:25-cv-10652, slip op. (D. Mass. Feb. 25, 2026)).)

Here, because § 1226(a) applies to Veloz Alvarado, he is owed the process given to him

under that statute. As for the Mathews factors, (1) Veloz Alvarado has a strong private liberty

interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and

danger to the community, and, (3) given his clean criminal record, it will be difficult for the

Government to demonstrate an interest in his detention. Indeed, before he was apprehended,

Veloz Alvarado was present in the United States for several years, and allegedly had begun the

asylum application process. (ECF No. 1 at PageID 3.) These facts indicate his ties to the United

States, his desire to remain, and his expectation that he would remain free from government

custody. And, as stated in Section II, the entry fiction doctrine is inapplicable here. See supra

Section II, n.6. Moreover, Veloz Alvarado was not otherwise incarcerated when ICE

apprehended him. As a result, his detention without bond violated his liberty interest, which

cannot be ignored. Thus, Veloz Alvarado is entitled to a bond hearing before an IJ, and his

detention under the mandatory detention framework of § 1225(b)(2)(A) violates his due process

rights.

Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of

the record, Veloz Alvarado's petition is **GRANTED**. He is entitled to release from custody.[7]

**IV.    Manner of Release**

Having determined that Veloz Alvarado must be released, the final question is whether to

order his release as an alternative to a bond hearing, or to order his release unconditionally. In

---

[7] Because the petition is granted on other grounds, the Court need not reach the question of whether Veloz Alvarado's status as a class member under Maldonado, 2025 WL 3713982, separately entitles him to relief.

the Petition, Veloz Alvarado requests "immediate, unconditional release," arguing that his detention is "void" and that "a bond hearing is an inadequate remedy in the face of the government's 'automatic stay' power and explicit defiance of judicial orders." (ECF No. 1 at PageID 1.)

Among the overwhelming number of district courts granting similar petitions, remedies have differed as to the manner of release. See Cardona v. Ladwig, No. 25-CV-01451, 2025 WL 3722009, at *7 (M.D. Tenn. Dec. 3, 2025) (surveying approaches). Several courts, including this Court in several instances, have granted conditional release, that is, ordering the petitioner's release if the petitioner is not granted a prompt bond hearing before an IJ. See, e.g., Garcia-Sanchez v. Acuna, No. 25-cv-3115, ECF No. 12 (W.D. Tenn. Jan. 13, 2026) ("Respondents are further ordered to provide Garcia-Sanchez with a bond hearing before an immigration judge under 8 U.S.C. § 1226(a) within seven days of the entry of this Order or otherwise release him."). Other courts, also including this Court at times, have granted immediate release, either pending a bond hearing—see, e.g., Moreno-Espinoza v. Ladwig, No. 25-CV-03093, 2025 WL 3691452, at *10 (W.D. Tenn. Dec. 19, 2025) ("Respondent is ordered to provide Petitioner with a bond hearing . . . within seven days of the entry of this Order and to release Petitioner pending the bond hearing.")—or without reference to a bond hearing—see, e.g., Cardona, 2025 WL 3722009, at *7; Yao v. Almodovar, No. 25 CIV. 9982, 2025 WL 3653433, at *12 (S.D.N.Y. Dec. 17, 2025) ("ICE is hereby ordered. . . immediately . . . to release Yao from custody.").

Release conditioned on a bond hearing is not appropriate here. Because ICE purported to detain Veloz Alvarado under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a). Rather, immediate release is the appropriate remedy for Veloz Alvarado's deprivation of liberty. See Cardona, 2025 WL

18

3722009, at *7 ("Because Petitioner's rights to a bond hearing under § 1226(a) have been denied,

'[a] bond hearing after the fact, by definition, would not and cannot cure that constitutional

violation [and, although Petitioner's] release today cannot cure his loss of liberty since

[November 3, the day he was detained], this remedy, relative to the procedural one of ordering a

bond hearing, is the one that comes closest to doing so.'" (quoting Yao, 2025 WL 3653433, at

*12)).  Because Veloz Alvarado's detention under § 1225(b)(2)(A) is void ab initio, the

appropriate remedy is to restore him to the status quo ante by releasing him immediately.

Next, between the two methods of immediate release—with or without reference to a

bond hearing—there appears to be a distinction without a difference.  After all, the Government

may at any time detain an illegally present noncitizen under § 1226(a), subject to a bond hearing,

and thus it is not necessary for this Court to order one.  ICE has that discretion.  See 8 U.S.C. §

1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained

pending a decision on whether the alien is to be removed from the United States.").  Thus, the

Court need not order a bond hearing.[8]

Because ICE's violations of § 1226(a) and of Veloz Alvarado's procedural due process

rights deprived him of his liberty for four months, see Rodriguez, 2026 WL 36345, at *12

("[Petitioner's] procedural due process rights are not violated by the very fact [he] is detained.

'Rather, [his rights] are violated because he has been detained without a hearing that accords

with due process.'"  Rodriguez, 2026 WL 36345, at *12 (quoting Lopez-Arevelo v. Ripa, No.

EP-25-CV-3372025, 2025 WL 2691828, *11 (W.D. Tex. Sep. 22, 2025)), immediate,

---

[8] Further, although Veloz Alvarado contends that ICE may block his release by filing at its discretion a Form EOIR-43, he is already subject to discretionary detention under § 1226(a), and thus the potential that ICE might file this form does not appear to materially affect his position.

unconditional release is the appropriate remedy.  If Ladwig, ICE, or DHS later decide to detain

Veloz Alvarado under § 1226(a), they must do so lawfully, in conjunction with a bond hearing.[9]

**CONCLUSION**

For the reasons stated above, the Petition is **GRANTED**.  Respondent is ordered to

release Veloz Alvarado immediately.  Respondent is further **ENJOINED** from pursuing Veloz

Alvarado's detention under 8 U.S.C. § 1225(b)(2)(A).  Respondent is **ORDERED** to file a Status

Report with this Court on or before March 16, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 9th day of March, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] Additionally, under INA regulations, the bond hearing is not a necessary step in the decision to detain, but rather a subsequent procedure.  After all, "the bond hearing is not itself an initial custody determination but an act of 're-determination.'"  Cardona, 2025 WL 3722009, at *7 n.12 (citing 8 C.F.R. § 236.1(d)(1) ("After an initial custody determination by the district director, including the setting of a bond, . . . the immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .")).